## VANCE v. YOUNGBERG.

### No. 3389.

Court of Civil Appeals of Texas. El Paso.

May 20, 1936.

Rehearing Denied June 11, 1936.

David J. Smith, of El Paso, for appellant.

Kemp, Nagle & Smith, of El Paso, for appellee.

PELPHREY, Chief Justice.

On March 11, 1931, an agreement was drawn purporting to be between the Alamo Lumber & Coal Company and appellee. It recited that appellee proposed to build a six-room house for R. J. Gillis on lots at the corner of Bay and Cotton streets in El Paso, Tex.; that he represented that American Mortgage Company would advance $2,750 as the work progressed, to be secured by a first lien against the property; that there existed a second lien of $580 set back for five years; that Alamo Lumber & Coal Company, in consideration of appellee buying all material through them, agreed to take on account at the end of the job third lien notes for the sum of $620 payable $40 per month; that the notes were to be further secured by a collateral note to be put up by Gillis and returned to him provided he met all the payments on the third lien payable to the Alamo Lumber & Coal Company, as due. This agreement was signed by Gillis and A. S. Stiles as manager of the Alamo Lumber & Coal Company, but not by appellee.

On March 19, 1931, Gillis and wife executed a note for $620 payable to appellee in monthly installments of $18 each. The first lien notes were also made payable to appellee and by him indorsed without recourse.

W. P. Stiles, who was doing business as the Alamo Lumber & Coal Company, died on March 5, 1932, and his wife, Anna L. Stiles, acting as administratrix of his estate, transferred the $620 note to appellant for the purpose of collecting and remittance only.

On June 15, 1935, this suit to recover on the note was filed naming Gillis and wife and appellee as defendants.

The cause of action alleged against appellee was that he, for a valuable consideration, before maturity, had negotiated and delivered the note to W. P. Stiles and that although said note was transferred without the indorsement of appellee, he thereby became liable and bound as an indorser of the note.

The trial court filed findings of fact and conclusions of law reading:

"1. That on or about March 11th, 1935, an agreement was entered into by and between W. P. Stiles, doing business as Alamo Lumber Co., as dealer, and R. J. Gillis, and Fay Gillis, as owners, and C. M. Youngberg, as contractor, whereby C. M. Youngberg as contractor would build for R. J. Gillis and Fay Gillis a house at 2419 Pittsburgh Street in the City of El Paso, Texas, and whereby the Alamo Lumber Co. was to finance all costs of said house above the first lien of $2750.00.

"2. That at said time, and subsequent thereto, C. M. Youngberg, carried with the Alamo Lumber & Coal Co. a personal open account, and that merchandise and materials for the Gillis house in the sum of $620.00 was furnished by Alamo Lumber Co. through Youngberg, and Youngberg's personal account with the Alamo Lumber Co. charged therewith.

"3. That R. J. Gillis and Fay Gillis executed first lien notes in the amount of $2750.00 said notes being made payable to C. M. Youngberg; that R. J. Gillis and Fay Gillis executed a third lien note in the sum of $620.00, likewise made payable to C. M. Youngberg.

"4. That the first lien notes, together with the third lien note mentioned above, were in the possession of the American

Mortgage Co., of El Paso, Texas, and that C. M. Youngberg endorsed said first lien notes without recourse.

"5. That the third lien note in the sum of $620.00 was not endorsed by Youngberg, and without his endorsement or knowledge the said $620.00 note was delivered by the American Mortgage Co., or some other person, to the Alamo Lumber Co., and by the Alamo Lumber Co. credited to the account of C. M. Youngberg, on the open account above mentioned.

"6. That in addition to the materials in the sum of $620.00 charged to the account of C. M. Youngberg, Youngberg from time to time made personal purchases from Alamo Lumber Co., and after crediting the $620.00 note to the Youngberg account there remained owing by Youngberg as a personal obligation the sum of approximately $151.54.

"7. That after the $620.00 note had been credited by the Alamo Lumber Co., on the Youngberg account, demand was made upon Youngberg to pay the said balance of approximately $151.54, and after such demand was made, R. P. Youngberg, a son of C. M. Youngberg, paid to the Alamo Lumber Co., the sum of $75.77 in full and final settlement of the balance owing by C. M. Youngberg to Alamo Lumber Co.

"8. That more than four years had elapsed between the date when the $620.00 note in question was delivered to the Alamo Lumber Co., and the date of the institution of this suit, after excluding from such period the time expiring between the death of W. P. Stiles and the appointment of a representative of his estate, but four years had not elapsed between the last payment made on said note by Gillis, and the institution of suit herein.

"9. That the agreement hereinabove mentioned was signed by A. C. Stiles as Manager for the Alamo Lumber Co., signed by R. J. Gillis, for the owners, but was not signed by C. M. Youngberg.

"10. That the materials for which the $620.00 note was given were used in the construction of the Gillis home; that at the time of the purchase of the same by Youngberg it was not intended that Youngberg would be personally liable thereon, or on the $620.00 note, but there was no express agreement between the Alamo Lumber Co. and Youngberg at the time Youngberg purchased such materials as to whether or not Youngberg would be personally liable therefor, nor was there ever any express agreement between Youngberg and the Alamo Lumber Co., whether or not Youngberg would be personally liable on the $620.00 note in question.

"11. That in the payment and acceptance of said $75.77 the parties intended only to settle and satisfy the balance of approximately $151.54 owed to Alamo Lumber Co. by C. M. Youngberg personally.

"12. I therefore conclude as a matter of law:

"1. That there is no personal liability of Youngberg on the $620.00 note in question.

"2. That there was an accord and satisfaction of the personal debt only of C. M. Youngberg in the approximate sum of $151.54 and there was no accord and satisfaction at said time of the said $620.00 note, if Youngberg was otherwise personally liable thereon.

"3. That if C. M. Youngberg was ever personally liable on the said $620.00 note, the cause of action thereon in favor of the Alamo Lumber Co. was not barred by limitation at the institution of this suit.

"Judgment was accordingly rendered by the Court for the defendant C. M. Youngberg in said cause."

Upon such findings and conclusions judgment was rendered in favor of appellant against Gillis and wife for $854.70, but that it take nothing as against appellee.

Appellant filed its motion for a new trial, and among other grounds alleged that it had discovered evidence material to its cause of action. The motion was overruled, and this appeal followed.

### Opinion.

The two points presented by appellant are that the court erred in not granting its motion for a new trial on the ground of newly discovered evidence, and that the judgment rendered is contrary to the law and the evidence. Under the latter point appellant proposes that even though the note was transferred without indorsement it was entitled to have it unqualifiedly indorsed by appellee in the absence of an agreement to the contrary and that the burden to prove such an agreement, if any there was, was upon appellee.

Appellant counters with the contention that the evidence and the findings showing that it was not the intention of the par-

ties that appellee should be personally liable on the note, that appellee received no value for the note, that he never transferred the note, and that he was never the holder of the note, the court properly rendered judgment in his favor.

With this contention we are in accord. Our Negotiable Instrument Act (Vernon's Ann.Civ.St. art. 5932, § 18) provides that no person shall be liable on an instrument whose signature does not appear thereon, and the only exception to that rule is found in section 49 (Vernon's Ann.Civ.St. art. 5934, § 49), which provides that where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires the right to have the indorsement of the transferor.

If appellant is to recover against appellee in this case, it must bring him within these provisions. Section 191 of the Negotiable Instrument Act (Vernon's Ann. Civ.St. art. 5948, § 191) defines a "holder" to mean the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.

It being uncontradicted here that appellee, though he was the payee of the note in question, was never in possession of it, there is room for disagreement on the question of whether he was such holder as is made liable under section 49. That question need not be decided here, however, for under the view we take of the case it can be admitted that appellee was the holder of the note sued upon and still he would not be liable because of the fact that he did not transfer it for value.

The court's findings of fact relative to this question are: (1) That the Alamo Lumber Company was to finance all costs of building the house for Gillis and wife above the first lien of $2,750; (2) that merchandise and materials for the Gillis house in the sum of $620 was furnished by Alamo Lumber Company through appellee and charged to his personal account with said Alamo Lumber Company; (3) that the materials for which the $620 note was given were used in the construction of the Gillis home; and (4) that the $620 note without being indorsed by appellee was, without his knowledge, delivered to the Alamo Lumber Company and by them credited upon his account. These findings are not questioned.

These facts show conclusively, we think, that appellee received no value when he transferred the note, if he can be said to have transferred it, to the Alamo Lumber & Coal Company, and therefore appellant, as the indorsee of said lumber company, will have no right of action arising by virtue of said section 49. The testimony of Mandeville could in no way change the effect of the transfer to appellant's indorser, and the trial court properly denied the new trial on the ground of newly discovered evidence.

Finding no error in the judgment of the trial court, it is affirmed.